# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE, WISCONSIN

BENJAMIN BRAAM, ALTON ANTRIM, DANIEL OLSZEWSKI, ANDREW CHRISTENSEN, WILLIAM PERSON, ELIZABETH DILLETT, GUY GIESE, and BRIAN CLAPPER on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

CATHY JESS, in her official capacity as Secretary of the Wisconsin Department of Corrections,

    Defendant.

Case No. 19-396

Judge

## CLASS ACTION COMPLAINT FOR CIVIL RIGHTS VIOLATIONS, DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs, through counsel, complain against Defendant Cathy Jess, in her official capacity as Secretary of the Wisconsin Department of Corrections, as follows:

### Nature of the Case

1. This case challenges the constitutionality of the State of Wisconsin's program of lifetime GPS monitoring of people who have been convicted of certain sex offenses.

2. Plaintiffs Benjamin Braam and Alton Antrim are individuals subject to lifetime GPS monitoring pursuant to Wisconsin law who are no longer under any supervision of the criminal justice system. Braam and Antrim, on behalf of themselves and all others similarly situated, contend that the State's program of

continued GPS monitoring of people who are no longer under the supervision of the criminal justice system violates their rights under the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiffs Daniel Olszewski, Andrew Christensen, William Person, Elizabeth Dillett, Guy Giese, and Brian Clapper are individuals on supervised release who are subject to lifetime GPS monitoring pursuant to DOC policy. Christensen, Person, Dillett, Giese and Clapper, on behalf of themselves and all others similarly situated, contend that placing them on lifetime GPS monitoring violates their rights under the Fourteenth Amendment's due process clause.

## Jurisdiction and Venue

3. Jurisdiction is proper in federal court pursuant to 28 U.S.C. §1331 because this action arises under 42 U.S.C. §1983 and the United States Constitution.

4. Venue is proper in this District pursuant to 28 U.S.C. §1391 because the events alleged below occurred in the Eastern District of Wisconsin.

5. Declaratory relief is authorized under 28 U.S.C. §2201. A declaration of law is necessary and appropriate to determine the respective rights and duties of parties to this action.

## The Plaintiffs

6. Plaintiff Benjamin Braam is a 40-year-old resident of Racine, Wisconsin. Braam was convicted of two counts of second degree sexual assault of a minor in 2000. Both counts resulted from a single criminal complaint and involved

2

sexual contact with the same teenaged victim. Braam discharged his sentence in March 2018 and is not under any kind of criminal justice supervision. When Braam was released from prison, he was not subject to GPS monitoring. In October 2018, seven months after he was discharged from the Wisconsin Department of Corrections' supervision, Braam received a letter from the DOC informing him that he would be required to wear a GPS device for the rest of his life. Presently, Braam is forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

7. Plaintiff Alton Antrim is a 63-year-old resident of Bristol, Wisconsin. Antrim was convicted of one count of first degree sexual assault in 1990 and of one count of first degree sexual assault in 1998. Antrim successfully completed his period of community supervision in October 2018 and is not under any kind of criminal justice supervision. He is currently forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

8. Plaintiff Daniel Olszewski is a 37-year-old resident of Salem, Wisconsin. Olszewski pled guilty in 2013 to two counts of possession of child pornography and was sentenced to three years in prison and two years of supervised release. Both counts resulted from a single criminal complaint. Olszewski was released from prison on January 16, 2018, and is currently on supervised release, which ends January 16, 2020. When he was released from prison, he was on GPS monitoring for five months, at which time his parole officer

decided that he no longer would be required to be on GPS monitoring. In September 2018, he was informed that he would again be placed on GPS monitoring. He is currently forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

9. Plaintiff Andrew Christensen is a 26-year-old resident of Bristol, Wisconsin. Christensen was convicted of three counts of possession of child pornography in 2014. All three counts resulted from a single criminal complaint. Christensen was sentenced to three years in prison and five years of extended supervision. He was released in October 2017 and is currently on supervised release, which ends in 2022. When he was initially released, he was not subject to GPS monitoring. In September 2018, 11 months after his release, Christensen was placed on GPS monitoring. He is currently forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

10. Plaintiff William Person is a 44-year-old resident of Burlington, Wisconsin. Person was convicted of three counts of possession of child pornography. All three counts resulted from a single criminal complaint. Person was sentenced to three years in prison and three years of community supervision. He was released from prison in April 2018 and is currently on supervised release, which ends in 2021. When he was initially released, he was not subject to GPS monitoring. In September 2018, Person was placed on GPS monitoring. He is currently forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

11. Plaintiff Elizabeth Dillett is a 34-year-old resident of Milwaukee, Wisconsin. Dillett was convicted of two counts of sexual assault of a child by person who works or volunteers with children, a class H felony. Dillett had a sexual relationship with a 16-year-old male when she was a teacher and he was a volunteer at the school where she worked. She was sentenced to two years of imprisonment and three years of supervision. She was released from prison in November 2018 and is currently on supervised release, which ends in 2021. Dillett was placed on GPS monitoring immediately after her release. She is currently forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

12. Plaintiff Guy Giese is a 66-year-old resident of West Milwaukee, Wisconsin. Giese was convicted of two counts of first degree sexual assault in 1995. Both counts arose from a single criminal complaint. Giese was released from prison in November 2017 and is currently on supervised release, which ends in May 2020. When he was initially released, he was not subject to GPS monitoring. In September 2018, Giese was placed on GPS monitoring. He is currently forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

13. Plaintiff Brian Clapper is a 57-year-old resident of West Allis, Wisconsin. Clapper was convicted of six counts of first degree sexual assault in 1984. All counts arose from a single incident and were brought in a single criminal complaint. Clapper was released from prison in July 2018 and is currently on

supervised release, which ends in 2035. When he was initially released, he was not subject to GPS monitoring. In September 2018, he was placed on GPS. He is currently forced to wear a GPS ankle monitor and is subject to lifetime GPS monitoring pursuant to the statutes challenged herein.

## The Defendant

14. Defendant Cathy Jess is sued in her official capacity as Secretary of the Wisconsin Department of Corrections.

15. Wisconsin law charges the Department of Corrections with enforcement of the state's GPS monitoring program, including the lifetime monitoring challenged herein. Wis. Stats. §301.48(2)(a).

16. In her capacity as the Director of the Department of Corrections, Defendant Jess has final authority for enforcing the statutes challenged herein against Plaintiffs and the members of the proposed classes.

## Relevant Statutory Provisions

17. Pursuant to Wis. Stats. §301.48(2), individuals who have been convicted of certain sex offenses are subject to lifetime GPS monitoring by the Wisconsin Department of Corrections.

18. The lifetime GPS monitoring requirement applies to persons who have been convicted of "level 1" or "level 2" sex offenses against minors; persons who are placed on lifetime supervision for a "serious sex offense" pursuant to Wis. Stats. §939.615; and persons who are deemed "special bulletin notification" offenders ("SBNs") pursuant to Wis. Stats. §301.46 (2m) (am).

6

19. Any individual who has been convicted of a sex offense "on 2 or more separate occasions" is deemed to be a "Special Bulletin Notification" offender ("SBN"). Wis. Stats. §301.46 (2m) (am).

20. Until September 2018, the Wisconsin Department of Corrections interpreted the phrase "2 or more separate occasions" to mean that the SBN statute applied only to persons who were convicted of sex offenses in two or more separate cases. Under this interpretation, Plaintiffs Braam, Christensen, Person, Dillett, Giese and Clapper were not deemed to be SBNs and were not subject to GPS monitoring because, although they were convicted of more than one count, each count stemmed from a single criminal complaint.

21. In September 2017, former Wisconsin Attorney General Brad Schimel issued a guidance to the Wisconsin Department of Corrections concerning the meaning of the SBN statute in which he concluded that "convictions on 'separate occasions' in Wis. Stat. §301.46 (2m)(am) refers to multiple convictions regardless of whether they were part of the same proceeding, occurred on the same date, or were included in the same criminal complaint." Former Secretary of the Wisconsin Department of Corrections Jon Litscher took no action based on Schimel's guidance.

22. Jon Litscher retired from his position as Secretary of the Wisconsin Department of Corrections in May 2018. Defendant Jess replaced Litscher.

23. In September 2018, Defendant Jess adopted Schimel's reinterpretation of the SBN law and began applying lifetime GPS monitoring to anyone convicted of more than one count. Pursuant to this reinterpretation of the law, Plaintiffs Braam,

Olszewski, Christensen, Person, Dillett, Giese and Clapper are now deemed to be SBN offenders and are subjected to GPS monitoring for life.

24. A person who is subjected to lifetime GPS cannot challenge that decision until after they have worn the monitor for 20 years. Wis. Stats. §301.48(6).

25. If a person subject to GPS monitoring is convicted of *any* criminal offense (presumably even a misdemeanor traffic offense) during the time period they are subject to monitoring, he forever forfeits his opportunity to challenge the Department's decision to subject him to lifetime GPS monitoring. Wis. Stats. 301.48(6)(b)(1).

26. When a person in the custody of the Department of Corrections for a felony sex offense is nearing the end of his or her sentence, the Department conducts an End of Confinement Review to determine if the person might meet the criteria for referral to civil commitment proceedings (*i.e.*, he or she "currently has a mental disorder that makes it more likely than not that the person will engage in future acts of sexual violence.") Wis. Stats. §980.01. None of the Plaintiffs were deemed to meet the criteria for civil commitment after such an evaluation.

27. The Department does not take into account the results of the End of Confinement Review when determining whether to subject a person who has been convicted of two or more counts to GPS monitoring. All such individuals are subjected to lifetime GPS monitoring even if they are evaluated to be a "low" risk of re-offense.

## The Effects of GPS Monitoring

28. Lifetime GPS monitoring imposes a severe burden on the lives of people who are subjected to it long after they have completed their criminal sentences and are no longer under the supervision of the criminal justice system.

29. GPS tracking is an intrusive search that provides the government detailed, real-time data about a person's every move. The system "monitors, identifies, and records" everywhere a person who wears the bracelet goes for the rest of their lives. Wis. Stats. §301.48(1)(dm).

30. People who wear the GPS monitor are at constant risk of being arrested based on equipment errors such as false alerts and lost signals. There is a well-documented history of problems with the state's GPS technology. See Riley Vetterkind, *Wisconsin doubles GPS monitoring despite five years of malfunctions, unnecessary jailings*, Milwaukee Journal Sentinel, March 8, 2018 (available at: https://www.jsonline.com/story/opinion/contributors/2018/03/08/wisconsin-doubles-gps-monitoring-despite-big-problems/395517002/) ("Five years after the Wisconsin Center for Investigative Journalism documented serious problems with the state's GPS monitoring program for offenders — false alerts that have landed offenders in jail, disrupting family lives and causing them to lose jobs — inefficiencies and inaccuracies with the system remain, according to state and county records and 16 offenders interviewed for this story.")

31. If the Department determines that an individual subject to GPS monitoring is capable of paying, it charges a monthly fee of up to $240 per month

($2,880 per year) for life. If an individual does not pay this fee, the State automatically deducts the amounts owed from any tax refund to which the person is entitled.

33. The GPS unit cannot be submerged underwater, so people who are forced to wear the monitor cannot swim or take a bath.

33. The GPS monitor cannot be removed and must be charged for a minimum of an hour twice per day to maintain sufficient battery power. Thus, people who are forced to wear a GPS monitor must be tethered to an electrical outlet for at least that amount of time or face arrest.

34. The GPS monitoring device is a bulky plastic unit that is clearly visible if the wearer wears shorts, a skirt or a dress. The presence of the GPS ankle monitor functions as a scarlet letter that denotes criminality, even if the wearer is no longer under any kind of criminal justice supervision.

35. The device communicates with the wearer with alarms and a pre-recorded electronic voice that causes embarrassment for the wearer. For example, when the battery life on the unit is low, the device emits a series of beeps and directions to charge the device; or if a person wearing a GPS monitor is on a bus or other public transportation vehicle that goes past a school, the monitor will announce that the wearer must contact the monitoring service. Thus, even when the device is not visible, it draws unwanted attention to the wearer and alerts others to its presence.

36. The device causes many wearers discomfort and injury, including scabs, blistering, chafing and skin irritation.

## Class Action Allegations

37. This action is maintainable as a class action for injunctive relief under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

38. **Class Definition.** There are two proposed classes, defined as follows:

   (1) All persons subjected to lifetime GPS monitoring pursuant to Wis. Stats. §301.48 beyond the time that they are subject to the supervision of the criminal justice system; and

   (2) All persons who are subjected to GPS monitoring while on supervised release from the Department of Corrections.

39. **Numerosity.** According to media reports, the state currently subjects more than 1,200 people to GPS monitoring, and the state added more than 200 people to its lifetime GPS monitoring program when Defendant Jess adopted former AG Brad Schimel's interpretation of the meaning of the "2 or more occasions" language. Plaintiffs' counsel thus believe that there are hundreds of people who meet the class definitions, making joinder impracticable, if not impossible.

40. **Common Questions of Law and Fact Predominate.** Members of the potential classes have identical questions of law and fact, to wit:

- What are the State's rationales for lifetime GPS monitoring;

- What are the technological capabilities of the GPS tracking system;

- What is the proper meaning of the "2 or more occasions" language contained in Wis. Stats. §301.46 (2m) (am);

11

- Whether GPS monitoring of people who are no longer subject to criminal justice supervision constitutes an unreasonable search in violation of the Fourth Amendment;

- Whether people on supervised release are entitled to due process before being placed on lifetime GPS supervision;

- Whether people placed on GPS monitoring are entitled to a mechanism that allows them to challenge ongoing monitoring before living in the community without committing an offense for 20 years.

41. **Typicality.** The claims of the named Plaintiffs are typical of the claims of the members of the classes. Each of the named Plaintiffs in Class 1 (Braam and Antrim) contends that being subjected to lifetime GPS monitoring constitutes an unreasonable search in violation of the Fourth Amendment. Each of the named Plaintiffs in Class 2 (Olszewski, Christenson, Person, Dillett, Giese and Clapper) contends that they are entitled to a hearing and an opportunity to contest (1) whether they have been convicted of a sex offense on "2 or more occasions" within the meaning of Wis. Stats. §301.46 (2m) (am); and (2) whether there is a legitimate penological need for GPS monitoring of their whereabouts while on supervised release or another form of community supervision. All Plaintiffs contend that they should be entitled to a process that allows them to challenge continued GPS monitoring after they have lived in the community for a period of time without committing another offense.

42. **Adequacy.** The named Plaintiffs have no conflict of interest or unusual fact pattern that would render them inadequate class representatives. The named Plaintiffs are represented by experienced counsel who have conducted numerous civil rights class actions.

12

43. The challenged laws and policies apply generally to all members of the classes, so that final injunctive relief and corresponding declaratory relief is appropriate respecting each class as a whole.

## COUNT I
## 42 U.S.C. § 1983 – Fourth Amendment
**(Fourth Amendment Claim on Behalf of Class 1)**

44. Plaintiffs re-allege and reincorporate, as though fully set forth herein, each and every allegation above.

45. Lifetime GPS monitoring of individuals who are no longer subject to the supervision of the criminal justice system constitutes an unreasonable search.

46. Wisconsin Stats. §301.48 violates the Fourth Amendment on its face and as applied to Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that this Court:

(a) enter an order certifying that this case may be maintained as a class action on behalf of the members of Class 1 and appointing the undersigned attorneys as class counsel;

(b) issue a judgment declaring that lifetime GPS monitoring of people who are no longer subject to the supervision of the criminal justice system is unconstitutional in violation of the Fourth Amendment of the U.S. Constitution on its face and as applied;

(c) enter a preliminary and then permanent injunction prohibiting Defendant from continuing enforcement of the unconstitutional laws and policies identified herein;

(d) award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

(e) grant such other relief as this Court deems just and proper.

## COUNT II
## 42 U.S.C. §1983 – Fourth Amendment
## (*Monell* Express Policy Claim on Behalf of Classes 1 and 2)

47. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

48. Defendant Jess has an official policy and practice of misinterpreting Wis. Stats. §301.46 (2m) (am). In particular, Defendant misinterprets the requirement of convictions on "2 or more separate occasions" a to refer to multiple convictions that were part of the same proceeding and were included in the same criminal complaint.

49. Pursuant to this official policy, Defendant applies lifetime GPS monitoring to people who have only been convicted of a sex offense on one occasion.

50. Defendant's misinterpretation of the statute violates the Fourth Amendment rights of Plaintiffs Braam, Olszewski, Christensen, Person, Dillett, Giese, Clapper and all others similarly situated because it subjects them to unreasonable searches.

WHEREFORE, Plaintiffs respectfully requests that this Court:

(a) issue a preliminary and then permanent injunction prohibiting Defendant from misinterpreting Wis. Stats. §301.46 (2m) (am) to apply to individuals who have been convicted of a sex offense on only one occasion;

(b) issue a declaratory judgment that states that the policy of applying Wis. Stats. §301.46 (2m) (am) to Plaintiffs and others who are not subject to its terms violates the Fourth Amendment;

(c) award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

(d)    grant such other relief as this Court deems just and proper.

# COUNT III
## 42 U.S.C. §1983 – Fourteenth Amendment
### (Procedural Due Process Claim on Behalf of Class 1)

51.    Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

52.    The Department of Corrections automatically applies lifetime GPS monitoring to every person who has been convicted of more than one count of a sex offense. This policy deprives the members of Class 1 of their due process rights because for 20 years there is no opportunity for people who have lived in the community without committing another offense to challenge the reasonableness of continuing to subject them to GPS monitoring.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a)    enter an order certifying that this case may be maintained as a class action on behalf of the members of Class 1 and appointing the undersigned attorneys as class counsel;

(b)    issue a preliminary and then permanent injunction requiring Defendant to provide an individualized opportunity to be heard before applying lifetime GPS monitoring to every person on supervision for a sex offense who has been convicted of more than one count;

(c)    issue a declaratory judgment that states that the Department's current policy violates the Fourteenth Amendment guarantee of procedural due process;

(d)    award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

(e)    grant such other relief as this Court deems just and proper.

# COUNT IV
## 42 U.S.C. §1983 – Fourteenth Amendment
## (Procedural Due Process Claim on Behalf of Class 2)

53. Plaintiffs reallege and reincorporate, as though fully set forth herein, each and every allegation above.

54. The Department of Corrections automatically applies lifetime GPS monitoring to every person on supervision for a sex offense who has been convicted of more than one count. This policy violates the Fourteenth Amendment guarantee of procedural due process because it deprives the members of Class 2 of their Fourth Amendment rights without any opportunity to contest (1) whether they have been convicted of a sex offense on "2 or more occasions" within the meaning of Wis. Stats. §301.46 (2m) (am); and (2) whether there is a legitimate penological need for GPS monitoring of their whereabouts while on supervised release or another form of community supervision.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court:

(a) enter an order certifying that this case may be maintained as a class action on behalf of the members of Class 2 and appointing the undersigned attorneys as class counsel;

(b) issue a preliminary and then permanent injunction requiring Defendant to provide an individualized opportunity to be heard before applying lifetime GPS monitoring to every person on supervision for a sex offense who has been convicted of more than one count;

(c) issue a declaratory judgment that states that the Department's current policy violates the Fourteenth Amendment guarantee of procedural due process;

(d) award Plaintiffs their reasonable attorneys' fees and cost pursuant to 42 U.S.C. § 1988, and other applicable law; and

(e) grant such other relief as this Court deems just and proper.

Respectfully submitted,

/s/ Mark G. Weinberg
/s/ Adele D. Nicholas
*Counsel for Plaintiff*

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869