ALTON ANTRIM, individually and on
behalf of all others similarly situated,

                Plaintiff,

     v.

JARED HOY, in his official capacity as
Secretary of the Wisconsin Department
of Corrections,

                Defendant.

Case No. 19-cv-0396-bhl

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT

After nearly six years of litigation, this class-action lawsuit has been whittled down to a single Fourth Amendment claim challenging Wisconsin's lifetime GPS monitoring of certain repeat sex offenders. Both parties have moved for summary judgment, offering competing research on the recidivism rates of sex offenders and the efficacy of Wisconsin's statutory monitoring scheme. While this social science might be relevant to policymakers deciding whether to enact such a scheme, it does not alter binding Seventh Circuit precedent confirming the reasonableness of Wisconsin's GPS monitoring program in a very similar context. Under that precedent, which Plaintiff Alton Antrim has failed to distinguish, the statute is constitutional as applied to him. Accordingly, Defendant's motion for summary judgment will be granted, Plaintiff's motion denied, and judgment entered in Defendant's favor.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Alton Antrim is a 67-year-old widower and resident of Kenosha, Wisconsin. (ECF No. 98 ¶118.) He is also a lifetime sex offender registrant and diagnosed pedophile. (ECF No. 102 ¶¶13, 17.) Antrim has sued Defendant Jared Hoy in his official capacity as Secretary of the Wisconsin Department of Corrections (DOC), the state agency responsible for overseeing Wisconsin's statutory GPS monitoring program for certain sex offenders. (ECF No. 5 ¶¶14–15; ECF No. 81 at 1 n.1.)

Antrim was twice convicted of first-degree sexual assault of a child, first in January 1991 and again in April 1999. (ECF No. 102 ¶¶1, 4.) He admits to molesting a total of 8 victims, all between 5 and 10 years of age. (*Id.* ¶12.) In October 2018, Antrim was discharged from extended supervision and is no longer under any form of criminal supervision. (ECF No. 98 ¶120.) Despite having been released from criminal supervision, Antrim is subject to lifetime 24-hour GPS monitoring under Wis. Stat. § 301.48 while he continues to reside in Wisconsin.

Wis. Stat. § 301.48 requires the DOC to maintain lifetime GPS tracking of people who have committed serious sex offenses, including offenses against children. Individuals subject to the statute must wear an ankle monitor at all times. (ECF No. 98 ¶¶1, 4.) The monitor is unobtrusive and fits under clothing. (ECF No. 102 ¶¶105–07.) The DOC does not track subject individuals on a real-time basis but instead analyzes their location every 24 hours to check whether the offender was present at or near schools, playgrounds, or other places that might arouse suspicion. (*Id.* ¶¶80, 84–90.) Tracking is terminated if a subject moves out of state. § 301.48(7m). An individual can also petition to terminate tracking after 20 years of monitoring. § 301.48(6).

Antrim is subject to GPS tracking under subsection 301.48(2)(a)(7). This portion of the statute requires GPS monitoring of individuals who are subject to law enforcement bulletin notices under Wis. Stat. § 301.46(2m)(am). As relevant to this case, Antrim falls within the ambit of subsection 301.46(2m)(am) because he has admittedly been convicted of qualifying sex offenses on two or more occasions. (ECF No. 62 at 3–4.)

On March 18, 2019, eight Named Plaintiffs filed this lawsuit challenging the constitutionality of Wis. Stat. § 301.48 under both the Fourth and Fourteenth Amendments. (ECF No. 1.) Those Plaintiffs also moved for a preliminary injunction. (ECF No. 3.) They amended both their complaint and preliminary injunction motion the next day. (ECF Nos. 5 & 7.) On May 1, 2019, Defendant moved to dismiss Counts II–IV of the amended complaint. (ECF No. 14.)

On December 17, 2019, after briefing was completed, Judge Pamela Pepper, to whom the case was then assigned, held a hearing to address both motions. (ECF Nos. 31 & 32.) At the hearing, the Court granted Defendant's motion to dismiss and denied Plaintiffs' request for preliminary injunctive relief. (ECF No. 32.) As a result of the ruling, only Count I, a Fourth Amendment claim, remained to be litigated. (*Id.*)

Plaintiffs immediately appealed the denial of their preliminary injunction motion. (ECF No. 33.) On September 23, 2020, while the appeal was pending, the case was subject to a judicial

reassignment. Almost two years later, on June 21, 2022, the Seventh Circuit affirmed the denial of Plaintiffs' request for preliminary injunctive relief, concluding that Plaintiffs could not show a likelihood of success on the merits of their Fourth Amendment claim. *Braam v. Carr*, 37 F.4th 1269 (7th Cir. 2022). The Court of Appeals explained that Plaintiffs' claim was largely indistinguishable from *Belleau v. Wall*, 811 F.3d 929 (7th Cir. 2016), which upheld a challenge to Wis. Stat. § 301.48 as it applied to sex offenders released from post-prison civil commitment. *Braam*, 37 F.4th at 1274–75. Based on *Belleau*, the Seventh Circuit agreed that Plaintiffs were unlikely to succeed on the merits of their claim and returned the case to this Court for further proceedings. *Id.* at 1274–77.

On remand, this Court gave the parties the opportunity to weigh in on how the Seventh Circuit's decision affected Plaintiffs' remaining claim. (ECF No. 43.) On December 7, 2022, the Court concluded Plaintiffs' Fourth Amendment claim was not precluded as a matter of law and directed the parties to propose a schedule for moving the case forward. (ECF No. 47.) The Court then issued a Scheduling Order following a February 27, 2023 Scheduling Conference. (ECF Nos. 50 & 51.) On July 13, 2023, Plaintiffs moved for class certification. (ECF No. 52.) The Court held an October 3, 2023 hearing on the motion at which the parties agreed that changes in state law had rendered the claims of Named Plaintiffs Benjamin Braam and Daniel Olszewski moot, leaving Antrim as the sole remaining Named Plaintiff. (ECF No. 58.) On December 13, 2023, the Court certified a class of those individuals who, like Antrim, are subject to lifetime GPS monitoring under Wis. Stat. § 301.48(2)(a)(7) because they have been convicted of qualifying sexual offenses on two or more separate occasions. (ECF No. 62.) According to the parties' most recent figures, the class consists of 680 individuals subject to lifetime monitoring. (ECF No. 98 ¶2.)

On May 31, 2024, the parties filed cross-motions for summary judgment. (ECF Nos. 81 & 88.) Both parties have also moved to strike or exclude portions of the evidence provided by the other side in support of the summary judgment motions. (ECF Nos. 86, 91, 92.)[1]

## LEGAL STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

---

[1] The evidence contested by both parties is irrelevant to the Court's analysis. Because Defendant is entitled to summary judgment irrespective of the challenged evidence, the Court will deny both parties' motions as moot.

56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could influence the outcome of the lawsuit. *Id.* at 248; *Contreras v. City of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). To survive a properly supported summary judgment motion, the opposing party must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).

Federal courts operate within a "vertical hierarchy." *United States v. Glazer*, 14 F.3d 1213, 1216 (7th Cir. 1994). Thus, decisions of the United States Supreme Court and the Seventh Circuit are "binding" on this Court in deciding matters of federal law. *Id.* When the Seventh Circuit has decided a question of federal law, the Court "must follow" that decision. *Id.*

## ANALYSIS

Antrim's sole remaining claim is that Wisconsin's lifetime GPS monitoring of sex offenders under Wis. Stat. § 301.48(2)(a)(7) violates the Fourth Amendment. This argument faces an uphill climb. As noted above, in *Belleau v. Wall*, 811 F.3d 929 (7th Cir. 2016), the Seventh Circuit considered and rejected a Fourth Amendment challenge to a different portion of Wis. Stat § 301.48, subsection 301.48(2)(b)(2). And in *Braam v. Carr*, 37 F.4th 1269 (7th Cir. 2022), the Seventh Circuit confirmed *Belleau*'s applicability to Antrim's challenge to subsection 301.48(2)(a)(7). In *Braam*, the Court of Appeals also specifically rejected many of the arguments Antrim makes now. Although *Braam* did not finally decide the merits of Antrim's challenge, the Seventh Circuit explained why Antrim and his co-plaintiffs were unlikely to succeed on the merits. The Court has now reached the time for deciding the merits of Antrim's claim. To survive summary judgment, he must explain why the GPS monitoring regime is an unreasonable search as applied to him and distinguish his claim from the plaintiff in *Belleau* and as interpreted in *Braam*.

Because Antrim has not overcome these hurdles, his claim fails as a matter of law. Defendant's motion for summary judgment will therefore be granted and Antrim's motion denied.

I. **In *Belleau* and *Braam*, the Seventh Circuit Held that Wis. Stat. § 301.48 Does Not Violate the Fourth Amendment in Most Applications.**

In *Grady v. North Carolina*, 575 U.S. 306 (2015), the Supreme Court confirmed that GPS monitoring of sex offenders constitutes a search under the Fourth Amendment. In so holding, however, the Court recognized that a GPS monitoring program for sex offenders could still pass constitutional muster, if it was "reasonable." *Grady*, 575 U.S. at 310 (explaining that the Fourth Amendment only bars "unreasonable searches"). Whether a search is reasonable requires consideration of "the totality of the circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Id.* In analyzing these considerations, courts must balance the individual privacy interests at stake against the legitimate state interests in performing the search. *Braam*, 37 F.4th at 1273 (citing *Birchfield v. North Dakota*, 579 U.S. 438, 476 n.8 (2016)).

In *Belleau*, the Seventh Circuit applied this test to Wis. Stat. § 301.48(2)(b)(2), a subsection of Wisconsin's lifetime GPS monitoring statute that applies to sex offenders released from post-prison civil commitment. 811 F.3d at 931–32. In that case, the plaintiff was twice convicted of sexually assaulting a child. *Id.* at 930–31. Following his second conviction, he was sentenced to ten years in prison but then paroled after six years in custody. *Id.* at 931. His parole was later revoked after he admitted to having sexual fantasies about two young girls. *Id.* When he was about to be released from prison, the state arranged for his civil commitment at a treatment center after a court found him to be a "sexually violent person." *Id.* (citing Wis. Stat. ch. 980). After five years of civil commitment, he was released from all supervision "on the basis of the opinion of a psychologist that he was no longer more likely than not to commit further sexual assaults." *Id.* He then learned that he would nevertheless continue to be subject to lifetime 24-hour GPS monitoring under subsection 301.48(2)(b)(2). *Id.* He responded by suing the Wisconsin Department of Corrections in federal court, claiming that the statutory monitoring scheme violated the Fourth Amendment as applied to him. *Id.* The district court agreed with him, but the Seventh Circuit reversed. *Id.* at 931–38.

In upholding subsection 301.48(2)(b)(2) as constitutional, the Seventh Circuit emphasized that the state had a strong interest in monitoring sex offenders and confirmed that lifetime

monitoring was a legitimate means of advancing Wisconsin's strong interest in protecting the public from recidivism by sex offenders. *Id.* at 932–36. The Court of Appeals noted that the plaintiff's crimes demonstrated that he was both a pedophile and predisposed "to commit sexually violent acts." *Id.* at 934. It acknowledged that expert testimony suggested his particular risk of reoffending was somewhat low—between 8% and 16%—but noted that "[t]here is serious underreporting of sex crimes, especially sex crimes against children." *Id.* at 933. The Court then concluded that convicted sex offenders like the plaintiff pose a sufficiently significant danger to the public even after they are released from prison or civil commitment and that lifetime monitoring is an effective deterrent of recidivism. *Id.* at 934, 936. It then balanced the state's strong interests against the program's encroachment on the plaintiff's privacy interests. It noted that the GPS anklet was unobtrusive and did not identify the plaintiff's actions, only his locations. *Id.* at 932, 936. The Court also emphasized that GPS monitoring created only a modest incremental burden on his privacy interests because, as a convicted sex offender, he was required to register and remain listed on the public sex-offender registry, which provides public access to his criminal records and home addresses in any event. *Id.* at 934–35. Given the "slight . . . incremental loss of privacy from having to wear the anklet monitor," the Court held that the burden on the plaintiff's privacy did not outweigh the substantial public interest served by the monitoring program. *Id.* at 936. Because the balance of interests weighed in the state's favor, the Seventh Circuit upheld Wisconsin's GPS monitoring program as reasonable under the Fourth Amendment. *Id.* at 936–37.

In affirming this Court's denial of injunctive relief in this case, the Seventh Circuit reaffirmed *Belleau* and applied its reasoning to Antrim's claim here. *Braam*, 37 F.4th at 1274–76. In doing so, the Court of Appeals rejected several attempts to distinguish the claim in this case from the plaintiff's claim in *Belleau*. *Id.* at 1274–75. With respect to the state's interest in the GPS monitoring scheme, the Court reiterated that Wisconsin "has a strong public-safety interest in monitoring repeat sex offenders for deterrence purposes." *Id.* at 1275. The Court of Appeals declined the invitation to use social-science research to weigh in on the efficacy of the program, noting that the courts' "role is not to second-guess the legislative policy judgment by parsing the latest academic studies on sex-offender recidivism." *Id.* (quoting *Vasquez v. Foxx*, 895 F.3d 515, 525 (7th Cir. 2018), *overruled on other grounds by Koch v. Village of Hartland*, 43 F.4th 747 (7th Cir. 2022)). The Court also reaffirmed *Belleau*'s recognition that sex offenders have diminished privacy interests even after being discharged from prison and post-confinement supervision and

rejected Plaintiffs' attempts to "undermine [*Belleau*'s] foundations." *Id.* Based on the totality of these circumstances, the Court of Appeals agreed with this Court that Plaintiffs could not establish a likelihood of success on the merits of their Fourth Amendment claim.

II. **Antrim Has Not Distinguished His Claim from the Seventh Circuit's Analysis in *Belleau*.**

The holdings and analyses in *Belleau* and *Braam* are major obstacles for Antrim. Indeed, Defendant contends that Antrim's Fourth Amendment claim is foreclosed by the Seventh Circuit's holdings in both cases. (ECF No. 82 at 22–25.) Defendant points out that the Court of Appeals in *Belleau* upheld portions of the same GPS monitoring law against a Fourth Amendment challenge brought by a repeat child sex offender. (*Id.* at 22.) Defendant further observes that, in *Braam*, the Court reaffirmed *Belleau* and applied it to Antrim's similar Fourth Amendment claim in the context of a preliminary injunction motion. (*Id.* at 25.) Thus, Defendant argues, those precedents require this Court to reject Antrim's claim.

Antrim offers three main attempts to avoid the holdings in *Belleau* and *Braam*. (ECF No. 101 at 24–28.) First, he argues that this Court's decision not to dismiss the case immediately upon remand means the Court has already rejected the argument that *Belleau* and *Braam* are dispositive of his claim. (*Id.* at 24.) This contention overstates the Court's prior ruling. As already emphasized, *Braam* involved an appeal from the denial of a preliminary injunction. In affirming that denial, the Court of Appeals relied upon *Belleau* to conclude that Judge Pepper had correctly concluded that Plaintiffs could not show a likelihood of success on the merits of their Fourth Amendment claim. *Braam*, 37 F.4th at 1274–76. After the mandate was returned to this Court, the parties briefed whether Plaintiffs' Fourth Amendment claim remained viable in light of the Seventh Circuit's decision. (ECF Nos. 44–46.) The Court rejected Defendant's contention that the law of the case doctrine required dismissal of the remaining claim, explaining that the Seventh Circuit had decided only that Plaintiffs' claim was *unlikely* to succeed on the merits. (ECF No. 47 at 1–2.) Because Defendant made no other arguments against the viability of Plaintiffs' claim, the case was allowed to continue. (*See id.* at 2.) The Court did not hold that *Belleau* and *Braam* were not obstacles to Antrim's claim; it simply allowed Antrim the opportunity to develop the record to try to distinguish his claim from the analyses in those decisions. The Court in no way suggested that Antrim had already prevailed in that opportunity.

Antrim next contends that his claim is distinguishable from *Belleau* on the facts. (ECF No. 101 at 25.) Several of these efforts amount to little more than attacks on *Belleau*'s reasoning and thinly-veiled criticisms of the Seventh Circuit's ruling itself. He insists, for example, that the Court of Appeals made erroneous assumptions in rejecting the plaintiff's claim in that case. (*See id.*) But this is not a basis for this Court to disregard precedent. Even if Antrim believes the Court of Appeals' assumptions in *Belleau* were wrong, that case remains binding on this Court. *See Glazer*, 14 F.3d at 1216. Antrim also argues that because this case involves a different statutory subsection than the provision at issue in *Belleau*, a different result is justified. (ECF No. 101 at 25.) He argues that the subsection at issue here, Wis. Stat. § 301.48(2)(a)(7), "applies to a broad and heterogenous group of people, many of whom present a low risk of reoffending." (*Id.*) He contrasts this with subsection 301.48(b)(2), the provision at issue in *Belleau*, which he describes as applying only to persons released from civil commitment and previously determined to be sexually violent and likely to engage in future acts of sexual violence. (*Id.*) Antrim insists that subsection 301.48(2)(a)(7) requires GPS monitoring of individuals who have merely been convicted of possession of child pornography and may be at a low risk of reoffending, unlike the plaintiff in *Belleau*, who had a documented inability to "suppress or manage his deviant desire." (*Id.* (quoting *Belleau*, 811 F.3d at 933); *see also* ECF No. 88 at 13–15.) This argument fails for a number of reasons, but primarily because it does not apply to Antrim. Antrim is not subject to lifetime GPS monitoring because of a conviction for merely possessing child pornography. He has twice been convicted of first-degree sexual assault of a child. He cannot win relief for the class he represents by arguing facts that do not apply to him. *See Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978) ("Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." (quoting *Brown v. United States*, 411 U.S. 223, 230 (1973)). Antrim's argument is, essentially, that the challenged statute is overbroad, but the overbreadth doctrine is a First Amendment doctrine and has no application to a Fourth Amendment case. *Braam*, 37 F.4th at 1276. To warrant relief for himself and the class he represents, Antrim must show that Wis. Stat. § 301.48 is unconstitutional as applied to *him*, not to unidentified potential members of the class. He has failed to do so. Like the plaintiff in *Belleau*, Antrim has twice been convicted of sexually assaulting young children and is a diagnosed pedophile subject to lifetime placement on the sex offender registry. As the Seventh Circuit explained in *Braam*, the reasoning in *Belleau* applies with equal force to Antrim's claim.

Antrim's third and final argument is that the Court should "reconsider the persuasive force of *Belleau*." (ECF No. 101 at 26–28.) This misunderstands the role of precedent and the hierarchy of the federal courts. Decisions of the Seventh Circuit (and Supreme Court) are *binding* on this Court. *See Glazer*, 14 F.3d at 1216. Even if it were so inclined, the Court has no authority to "reconsider the persuasive force of *Belleau*." Antrim's block quotation of Justice Gorsuch's concurrence in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), on the limitations of *stare decisis* is inapposite. (*See* ECF No. 101 at 26.) The Supreme Court, as this nation's highest court, has authority to overrule not only the decisions of the lower courts, but also its own prior decisions. Similarly, the Seventh Circuit may overrule its own prior decisions. This Court does not have the authority to overrule or disregard the decisions of its superior federal appellate courts.

Accordingly, Antrim has not marshaled evidence sufficient to survive summary judgment. In sum, even viewing the record in the light most favorable to Antrim, the Court concludes that he has not presented sufficient evidence to distinguish his claim from *Belleau* and show that there is a genuine issue for trial. *See Siegel*, 612 F.3d at 937. Accordingly, Defendant's motion for summary judgment is granted and Antrim's denied.

## CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant Jared Hoy's Motion for Summary Judgment, ECF No. 81, is **GRANTED** and the case **DISMISSED**. The Clerk is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff Alton Antrim's Motion for Summary Judgment, ECF No. 88, is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Exclude Expert Testimony, ECF No. 86, and Motion to Strike, ECF No. 91, and Plaintiff's Motion to Strike, ECF No. 92, are **DENIED as moot**.

Dated at Milwaukee, Wisconsin on March 11, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge